IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

MICHAEL L.,[1]

     Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

Case No. 6:19-cv-00181-AA
**OPINION AND ORDER**

AIKEN, Judge:

Plaintiff Michael L. brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Insurance ("SSI"). For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with the Court's opinion.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## BACKGROUND

On July 25, 2013, plaintiff was found to be not disabled by an Administrative Law Judge ("ALJ"), based on prior applications for DIB and SSI. The decision was upheld by the Appeals Council. On January 9, 2015, plaintiff again applied for DIB and SSI, alleging disability beginning on May 12, 2012. The agency denied these claims initially and again upon reconsideration. Thereafter, plaintiff requested a hearing before an ALJ, and a hearing was conducted.

The ALJ found there had a been a showing of a changed circumstance with new and material evidence related to a finding affecting the issue of disability with respect to the unadjudicated period, July 26, 2013 to the date of the ALJ's decision. Tr. 16. Thus, the ALJ did not adopt the findings of the prior claim to determine whether plaintiff was disabled with respect to that period. However, after reviewing the evidence, the ALJ determined plaintiff was not disabled under the Act. The Appeals Council denied review, and the ALJ's decision became the final decision of the Commissioner. This action followed.

## STANDARD OF REVIEW

A reviewing court shall affirm the decision of the Commissioner if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation marks omitted). To determine whether substantial evidence exists, the district court must review the administrative record as a whole, weighing both the evidence that supports and detracts from the decision of the ALJ. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## COMMISSIONER'S DECISION

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof falls to the claimant at steps one through four, and with the Commissioner at step five. *Id.*; *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001). At step five, the Commissioner must show that the claimant can adjust to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.* If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante*, 262 F.3d at 953–54.

Here, the ALJ found that plaintiff was not disabled. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease status post-laminectomy with pedicle screw fixation and lumbar fusion; failed back syndrome; an affective disorder; Post-Traumatic Stress

Disorder (PTSD); a personality disorder; a substance abuse disorder; an attention deficit hyperactivity disorder; and an anxiety disorder not otherwise specified. At step three, the ALJ found that plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Before proceeding to step four, the ALJ determined that plaintiff's RFC allowed him to perform a range of light work as defined in 20 CFR § 404.1567 (c) and 416.967(c) with these limitations:

> [Plaintiff] requires the freedom to use a cane during ambulation, as needed, and also requires the freedom to alternate sitting or standing, as needed throughout the workday while remaining on task. The [plaintiff] cannot climb ladders, ropes or scaffolds. He is able to balance occasionally, while using a handheld assistive device. He can perform other postural activities on an occasional basis. The [plaintiff] should avoid moderate exposure to pulmonary irritants. He also should avoid moderate exposure to hazardous machinery. He must avoid all exposure to operational control of moving machinery and to unprotected heights. The [plaintiff] is able to understand, remember, and carry out simple instructions and tasks consistent with a DOT GED general reasoning level of 2 or less, and he is able to tolerate no more than occasional interaction with the public and coworkers.

Tr. 21.

At step four, the ALJ found that plaintiff could not perform any of his past relevant work. At step five, the ALJ found that based on plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy where plaintiff could sustain substantial gainful employment despite his impairments. Specifically, the ALJ found that plaintiff could perform the jobs of small product assembler II, electronics worker, and marker II. As a result, the ALJ

concluded that plaintiff was not disabled under the Act from May 12, 2012, the alleged onset date, through January 31, 2018, the date of the ALJ's unfavorable decision.

## DISCUSSION

Plaintiff contends that, in determining plaintiff's RFC, the ALJ erred in rejecting (1) the examining medical opinion of Wayne Taubenfeld, PhD, (2) the "other" medical source statements of Jennifer Donovan, MS, and (3) plaintiff's subjective symptom testimony.  The Court addresses each argument in turn.

## I.    *Medical Opinion of Wayne Taubenfeld, PhD*

In February 2016, plaintiff was referred to Dr. Taubenfeld for a learning disability and psychological assessment to determine whether plaintiff had any mental, cognitive, or emotional difficulties that would affect his ability to retain employment. Tr. 548.  Dr. Taubenfeld conducted a structured clinical interview and performed several assessments[2] before making his findings.  *Id.*  Dr. Taubenfeld diagnosed plaintiff with generalized anxiety disorder, PTSD, bipolar disorder, dysthymia, ADHD, alcohol use disorder (in remission), cannabis use disorder (mild), stimulant use disorder (in remission), borderline personality disorder, antisocial disorder, and personality disorder NOS (negativistic). Tr. 559.  For work limitations, Dr. Taubenfeld opined that plaintiff has "difficulties coping with emotional demands and stress of work," "limited work tolerance, and may have problems with

---

[2] The assessments included: Wechsler Adult Intelligence Scales, Fourth Edition (WAIS-IV), Woodcock Johnson Tests of Achievement—Third Edition (WJ-III), Beck Depression Inventory-II, Burns Anxiety Inventory, Connor's Adult ADHD Rating Scales (CAARS), and Millon Clinical Multiaxial Inventory (MCMI-III), 3rd Edition.  Tr. 548.

supervision," "some difficulties sustaining attention," and limited "marketable or transferable skills" and "stamina or work tolerance due to pain fatigue." Tr. 561. The ALJ gave "limited weight" to Dr. Taubenfeld's medical opinion. Tr. 25.

When making a disability determination, an ALJ shall consider and explain the weight afforded to every medical opinion in the record. *See* 20 C.F.R. § 404.1527(c). Social security law recognizes three types of medical sources: (1) treating, (2) examining, and (3) non-examining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id*. More weight is also given to an examining physician than to a non-examining physician. *Id*. To reject the uncontradicted opinion of a treating doctor, an ALJ must state "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Here, however, Dr. Taubenfeld's opinion was contradicted by the state examining consultants' opinions. Tr. 24–25. Thus, the ALJ was required to provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Ryan*, 528 F.3d at 1198.

The ALJ discounted Dr. Taubenfeld's opinions, reasoning that his findings were not supported by the record because he diagnosed plaintiff with "mental conditions for which the treating sources have not diagnosed, and for which they had not treated the claimant." Tr. 25. Plaintiff asserts that the fact that Dr. Taubenfeld's diagnosis was not identical to plaintiff's treating providers' diagnoses is not a valid basis to reject his opinion. Plaintiff further contends that the ALJ failed to explain

how treatment for Dr. Taubenfeld's diagnosis would differ from the treatment plaintiff received from his providers, noting that his recorded symptoms were similar between the two assessment records.

The Court agrees that the ALJ erred in discounting Dr. Taubenfeld's opinion. An ALJ may reject a medical opinion that is unsupported by the medical record. *Coleman v. Saul*, 979 F.3d 751 (9th Cir. 2020) (no internal pagination in published opinion as of this writing) (citing *Batson,* 359 F.3d *at* 1195). But the ALJ here failed to identify specific contradictions between the different diagnoses made by Dr. Taubenfeld and plaintiff's providers or explain why the findings of plaintiff's provider's, who were not "acceptable" medical sources, should be preferred over Dr. Taubenfeld's. *See Garrison*, 759 F.3d at 1012 (in supporting his findings, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings").

The Commissioner contends that it was reasonable for the ALJ to question Dr. Taubenfeld's opinion when it was rendered after a single examination, and the other providers had a longer treatment history with plaintiff yet found less limitations. But the ALJ's decision does not articulate this reasoning, nor can the Court infer that the ALJ rejected Dr. Taubenfeld's opinion because his minimal interaction with plaintiff suggested he was unable to make an accurate assessment. Thus, the Commissioner's *post-hoc* rationalization does not provide a basis to affirm the ALJ's decision. *See Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (establishing that the court may only review the reasons provided by the ALJ in the disability decision).

Page 7 – OPINION AND ORDER

In sum, the ALJ failed to provide specific, legitimate reasons for crediting the state agency consultants over Dr. Taubenfeld or otherwise rejecting Dr. Taubenfeld's opinions regarding plaintiff's attention span, ability to interact appropriately with supervisors and maintain emotional stability, and his need for extended training and extra time to complete tasks.  That error was not harmless.

In general, an error is harmless if "it does not negate the validity of the ALJ's ultimate conclusion."  *Cha Yang v. Commissioner of Social Sec. Admin.*, 488 Fed. App'x 203, 204 (9th Cir. 2012) (citation omitted).  However, here, it is not clear the ALJ would have reached the same disability determination if he had included Dr. Taubenfeld's opined limitations in plaintiff's RFC, since, for example, the vocational expert ("VE") testified that an individual who, compared to other workers, gets off task "10% or more of the time" or has trouble controlling anger responses to co-workers and supervisors would be precluded from competitive work.  *See* Tr. 953–55.

## II.    *"Other" Medical Source Statements of Jennifer Donovan, MS*

Ms. Donovan began treating plaintiff twice a month on December 10, 2015.  Tr. 735.  About five months later, on April 6, 2016, Ms. Donovan prepared a Mental Residual Functioning Capacity form for plaintiff.  *See* Tr. 735–41.  On the form, Ms. Donovan explained that she was treating plaintiff for pain management, processing grief related to his disabilities, and to decrease the "frequency and intensity of his anger outbursts."  Tr. 735.  Ms. Donovan opined that plaintiff would have marked limitations in his ability to "maintain attention and concentration for extended periods of time," perform work duties within a regular schedule, and complete a

normal workday or work week without interruptions from his mental symptoms.  Tr. 739–40.  Additionally, she noted that plaintiff would have marked limitations in his ability to travel to unfamiliar workplaces or use public transportation.  Tr. 741.  Ms. Donovan also diagnosed plaintiff with PTSD and acknowledged her assessment was based on his subjective reports and her observations.  *Id.*

The ALJ must consider opinions from medical sources that are not within the definition of "acceptable medical sources."  *See* 20 C.F.R. § 404.1527(f); *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("[T]herapists are considered other sources.") (quotations and citations omitted).  Although "other source" opinions are not entitled the same deference as acceptable medical source opinions, the ALJ may discount other source testimony only by providing "germane" reasons for doing so supported by substantial evidence.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

The ALJ gave "little weight" to the statements of plaintiff's therapist, Ms. Donovan.  Tr. 24.  In weighing her opinion, the ALJ first noted that Ms. Donovan admitted her assessment was "based upon the subjective reports and observations" of plaintiff during therapy.  *Id.*  Although an ALJ can discredit a treating provider's opinion based largely on self-reports, the rule "does not apply in the same manner to opinions regarding mental illness."  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).  Due to the nature of psychological impairments, an ALJ may not reject a mental health opinion because of the expert's "partial reliance" on a patient's self-reports.  *Id.*  Here, however, the ALJ could reasonably infer that Ms. Donovan's

opinion relied too heavily on plaintiff's complaints because in the four months Ms. Donovan had to observe plaintiff before writing her report, of the eight appointments plaintiff was scheduled, he cancelled or did not show up to two and called in to two. As a result, Ms. Donovan only observed plaintiff in person four times before making her findings. Additionally, although Ms. Donovan points out in her treatment notes that plaintiff continued to process his trauma and feelings around his disability issues, she makes no reference to objective measures, such as mental status evaluations, to base her opinion. *See* Tr. 563, 891, 893. Thus, although a psychiatric evaluation depends in part on a patient's reports of their symptoms, it was reasonable for the ALJ to question whether Ms. Donovan reliably formed her opinion based on objective measures and personal observations of plaintiff in addition to plaintiff's self-reports, especially due to the limited times she was able to observe plaintiff.

Next, the ALJ reasoned that the examination notes of Ms. Donovan did not support her findings and were "inconsistent with the record and the findings of the state agency consultants." Tr. 24. The ALJ may validly discredit a medical opinion if it is inconsistent with the provider's treatment notes. *Ghanim*, 763 F.3d at 1161 (citing *Molina*, 674 F.3d at 1111–12) ("A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider."). Plaintiff asserts that the ALJ's reasoning is not supported by substantial evidence in the record. However, Ms. Donovan's treatment notes from the small number of in-person visits did not include summaries of her observations, but instead reported only that they discussed

plaintiff's childhood trauma and the stress and frustration he experiences dealing with his disability.  Tr. 563, 565, 568, 891.  Moreover, Ms. Donovan's notes about plaintiff's feelings and anxieties do not suggest symptoms consistent with the significant limitations she marked in her assessment.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (a physician's notes should demonstrate how a claimant's symptoms translate into specific functional deficits which preclude certain activities).

Plaintiff points to various treatment records documenting that his psychiatric medication was not benefiting him and identifying increased mental symptoms, such as flashbacks, anxiety, and nightmares.  However, this evidence, when considered in the context of the whole record, does not undermine the ALJ's rationale.  Even as plaintiff's nightmares and flashbacks were increasing, plaintiff and his treating providers often reported that he was making significant progress with his anger management and interactions with others.  *See* Tr. 568, 577, 608, 614, 616, 608, 671, 674, 678, 682, 685, 687, 688.  Thus, because the record supports either outcome, the Court may not substitute its own judgement for that of the ALJ.  *See Batson*, 359 F.3d at 1196 (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  Additionally, although the opinion of a non-examining state consultant cannot by itself represent substantial evidence sufficient to justify rejecting the opinion of an examining doctor, *Morgan*, 169 F.3d at 602, they may serve as substantial evidence when," as here, "the opinions are consistent with independent clinical findings or other evidence in the record."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

The ALJ also reasoned that Ms. Donovan is not qualified to treat or assess plaintiff's alleged "severe physical pain," which she factored into her findings. Tr. 24. But Ms. Donovan's form suggests that she was not opining about plaintiff's physical symptoms but instead was demonstrating how his pain affects his mental health impairments and related limitations.   Although she explained that plaintiff complains of "severe physical pain" and that she had observed signs of pain in his behavior, she noted that plaintiff "describes significant anger and grief *related* to [his pain] symptoms." Tr. 736. (emphasis added).   Moreover, although she responded that plaintiff's pain symptoms would affect his ability to function in a workplace, she explained that plaintiff's PTSD would cause similar distractions and difficulties in focusing.  *Id.*  She further noted that plaintiff has become "extremely frustrated" with employer's lack of understanding for his situation.  *Id.*  Thus, the ALJ's reasoning is misdirected.  Nevertheless, any error was harmless because the ALJ validly rejected Ms. Donovan's opinions for their inconsistency with her treatment notes and the medical record.  *Batson*, 359 F.3d at 1197 (explaining that even if not all of the ALJ's findings are upheld, the overall decision may still be upheld if the ALJ provided other valid rationales).

Finally, plaintiff asserts the ALJ failed to apply the appropriate factors when considering Ms. Donovan's opinion.  But the ALJ's decision reflects a consideration of applicable factors.  Notably, the ALJ expressly referenced the length and nature of Ms. Donovan's treatment relationship with plaintiff, specifying that she began treating plaintiff twice a month since December 2015 for PTSD, anger outbursts,

irritability, and difficulty focusing.  Tr. 24; *see Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (reasoning that if a treating provider's opinion is inconsistent with other substantial evidence, the opinion is still given deference but must be weighed by the factors provided in CFR § 404.1527); *see also* CFR § 404.1527(c) (when weighing a medical opinion, the ALJ must consider factors such as the treatment relationship, including length and frequency of examination and nature and extent of relationship, supportability, consistency, and specialization).

In sum, the ALJ's decision to discount Ms. Donovan's opinions is supported by substantial evidence in the record and free from harmful error.

### III.    *Plaintiff's Subjective Symptom Testimony*

Finally, plaintiff asserts that the ALJ erred in discounting his subjective symptom testimony.   When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, the ALJ must provide "specific, clear and convincing reasons" supported by substantial evidence to reject the claimant's testimony regarding the severity of his symptoms.   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).   "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).   "This is not an easy standard to meet: 'the clear and convincing standard is the most demanding required in Social Security

cases.'" *Garrison*, 775 F.3d at 1015 (citation omitted).    However, if the ALJ's credibility finding is specific, clear, and convincing, and supported by substantial evidence in the record, the court may not engage in second-guessing. *Thomas*, 278 F.3d at 959.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, however, his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the record.  Tr. 23.

### A.    *Physical Symptoms*

At his hearing, plaintiff testified that he experiences pain in his "lower back, hips, legs, [and] feet."  Tr. 926.  He explained that his back and hip pain affects his ability to carry and lift things and do chores around the house.  Tr. 928.  In rejecting plaintiff's pain symptom testimony, the ALJ reasoned that plaintiff's statements that his pain symptoms limited his ability to work, specifically by causing "symptoms such as inability to stand for long periods," was inconsistent with the medical evidence regarding his back, leg, and hip issues.  *See* Tr. 22-23.  The ALJ noted that in 2015 plaintiff's chart notes indicated plaintiff's back and pain symptoms were both "stable."  Tr. 23.  The ALJ pointed out that although plaintiff reported to his physician pain and leg numbness down both his legs, his EMG results from that visit were normal without evidence of radiculopathy.  Tr. 23.  Similarly, the ALJ observed that although plaintiff reported intermittent numbness in both legs and feet, plaintiff demonstrated negative straight leg testing and a CT scan of his lumbar spine

"indicated protrusions at L4-L5 resulting in mild central canal stenosis without evidence of foraminal compromise." Tr. 23. Although subjective pain testimony may not be rejected on the sole basis that it is not consistent with objective medical evidence, "the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff asserts that, in making his finding, the ALJ merely provided a boilerplate statement discrediting plaintiff's testimony and relied on a cursory and selective summary of the treatment record to support his determination. The ALJ may not cherry-pick isolated instances of improvement. *Ghanim*, 763 F.3d at 1164. However, a review of the record correlates with the ALJ's analysis. For instance, in August 2013, although plaintiff complained to his physician of constant aching back pain with moderate pain radiating to his left thigh, a physical exam showed the range of motion in his back was normal, with strength intact and only mild tenderness. Tr. 405. Then, in June and August of 2015, plaintiff's straight leg testing was negative, and he presented with "no current mobility problem." Tr. 536–37, 542–43. Likewise, in April 2016, x-ray results of plaintiff's cervical spine showed his "[d]isc spaces" were maintained and his prevertebral soft tissues were "normal." Tr. 749–50, 788. Accordingly, the ALJ reasonably discredited plaintiff's pain symptom testimony by reasoning it was unsupported by the objective medical record and did not rely on isolated periods of improvement to do so. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (in rejecting plaintiff's testimony, the ALJ reasonably relied on the

fact that plaintiff "repeatedly reported back and neck pain to her treating and examining physicians, yet all x-rays, CT scans, and myelograms were normal"); *see also Batson*, 359 F.3d at 1196 (reasoning that pain symptoms could not be explained on an objective, physical basis by claimant's treating physician).

Moreover, the ALJ provided an additional specific, clear, and convincing reason to reject plaintiff's testimony:  that plaintiff's pain was well controlled by Percocet.  An ALJ may rely on a medication's control of pain symptoms to undermine a plaintiff's subjective symptom testimony.  *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) ("Factors that the adjudicator may consider when making such credibility determinations include the claimant's daily activities, inconsistencies in testimony, *effectiveness* or adverse side effects of any pain medication, and relevant character evidence.") (citation omitted) (emphasis added); *see also Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (reasoning that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability").  A review of the medical record supports this rationale.  For instance, in August 2014, plaintiff's physician noted plaintiff's back issues were "stable on chronic pain medication." Tr. 408.  Similarly, in November 2015, plaintiff's provider reported that plaintiff's pain medication allowed for his functioning goals. Tr. 744.  Thus, the ALJ provided specific, clear and convincing reasons to discredit plaintiff's pain testimony. *Lingenfelter*, 504 F.3d at 1036.

### B.    *Mental Health Symptom Testimony*

Plaintiff testified that he sees a therapist to work on his "PTSD issues." Tr. 931. When questioned about what was contributing to his daily stressors, plaintiff replied that he is constantly stressed about paying his bills. Tr. 935. Plaintiff explained that since his back surgery, he feels "more useless," that he would be "better off dead," and that he is angry with himself because he is unable to do the things he used to. Tr. 937. In rejecting plaintiff's mental health symptom testimony, the ALJ suggested that his testimony was unreliable because the medical record was inconsistent with his self-reports of paranoia and anxiety symptoms. *See Connett*, 340 F.3d at 874 (reasonable for ALJ to determine a claimant is unreliable where their self-reports are inconsistent with the medical evidence); *see also Ghanim*, 763 F.3d at 1163 (when assessing credibility, the ALJ may consider prior inconsistent statements concerning plaintiff's symptoms). For instance, the ALJ noted plaintiff frequently reported issues with anxiety and PTSD, however, medical records indicated plaintiff was noted to have a "normal mood and appropriate" affect with a mental status that was "good." Tr. 24

Plaintiff asserts that the ALJ failed to identify what testimony he found unreliable and explain what evidence undermined plaintiff's complaints. However, the ALJ noted that plaintiff testified that his "mental impairments made it difficult for him to go out in public alone, made him paranoid and anxious . . . and rendered [him] unable to perform work on a sustained basis." Tr. 22. Then, in discrediting plaintiff's testimony, the ALJ pointed to various medical records where plaintiff

reported "he was doing okay overall" and was noted to have a good mental status. Tr. 24. Therefore, the ALJ supported his rejection of plaintiff's testimony with examples from the record contradicting plaintiff's alleged symptoms. *See Reddick*, 157 F.3d at 722 (the ALJ must identify what testimony is not credible and point to what evidence in the record supports discrediting the claimant's complaints) (citations and quotations omitted).

In addition, the ALJ discredited plaintiff's symptom testimony by inferring that his reluctance to reduce his marijuana use reflected an unexplained departure from his prescribed course of treatment. *Id.* The courts have long held that, "in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina*, 674 F.3d at 1113 (quoting *Tomasetti*, 533 F.3d at 1039) (internal quotation marks omitted). Plaintiff reported at therapy that he was "smoking large amounts of marijuana on a daily basis," although plaintiff's therapist opined that his marijuana consumption was "most likely" significantly contributing to his mental health issues. Tr. 804, 806. Furthermore, plaintiff's therapists note on several occasions discussing the damaging effects from cannabis smoke, yet plaintiff was "unwilling to reduce, or even consider reducing, his cannabis use." *See* Tr. 806, 877, 875, 901. Therefore, the ALJ provided clear and convincing reasons supported by substantial evidence in the record to reject plaintiff's mental health symptom testimony. *Lingenfelter*, 504 F.3d at 1036.

## IV.    *Type of Remand*

Although reviewing courts generally remand to the agency for "additional investigation or explanation," *Florida Power & Light Co. v. Lorio*, 470 U.S. 729, 744 (1985), Congress has granted courts some additional flexibility in § 405(g) "to reverse or modify an administrative decision without remanding the case for further proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1177–78 (9th Cir. 2000); *see also Garrison,* 759 F.3d at 1019.   Courts also have discretion to remand for further proceedings or for the immediate payment of disability benefits.   *Harman*, 211 F.3d at 1178.   However, a remand for benefits is only appropriate in rare circumstances, *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004), and should only be ordered where "no useful purpose would be served by further administrative proceedings, or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision." *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989) (citations omitted).

Under the Ninth Circuit's "credit-as-true" doctrine, this Court must undertake a three-step inquiry to make that determination.   *Burrell*, 775 F.3d at 1141.   The reviewing court must first determine whether the ALJ committed harmful legal error. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("such as failing to provide legally sufficient reasons for rejecting evidence").   Second, if the court finds such an error it must "review the record as a whole and determine whether it is fully developed, [] free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id*. (quotation marks omitted).   Third, if the court does determine

that the record has been fully developed, and there are no outstanding issues left to be resolved, the court must consider whether "the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Id.* (quotation marks omitted).

Here, the first step is satisfied because the ALJ failed to provide specific, legitimate reasons to reject Dr. Taubenfeld's opinions. However, at the second step, the record is not fully developed or free from conflicts and ambiguities. For example, the ALJ identified a potential conflict between plaintiff's provider's and Dr. Taubenfeld's disagnoses, however, as discussed above, the ALJ failed to explain how the provider's assessment was more reliable. *See Treichler v. Comm'r of Soc. Sec. Admin*, 775 F.3d 1090. 1105 (9th Cir. 2014). Additionally, after reviewing the record in this case, the Court finds that, as a whole, it creates serious doubt as to whether plaintiff is disabled under the Act. *See Dominguez*, 808 F.3d at 408 (noting that a reviewing court may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act"). Therefore, remand for further proceedings is the appropriate remedy.

On remand the ALJ shall reevaluate Dr. Taubenfeld's opinions and either credit them as true and revise the RFC accordingly, or provide legally sufficient reasons for any portion that is rejected.

## CONCLUSION

The Commissioner's decision is REVERSED and the case is REMANDED for further proceedings consistent with the Court's opinion.

IT IS SO ORDERED.

Dated this  15th  day of   April     2021.


_____
/s/Ann Aiken
Ann Aiken
United States District Judge